## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| HI-TECH PHARMACEUTICALS, INC., a | : | |
| Georgia corporation, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION FILE NO. |
| | : | |
| MUSCLEPHARM CORP., | : | JURY TRIAL DEMANDED |
| a Nevada corporation; and | : | |
| BRADLEY PYATT, an individual | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

## COMPLAINT

COMES NOW, the Plaintiff, Hi-Tech Pharmaceuticals, Inc. ("Hi-Tech" or "Plaintiff"), by and through the undersigned counsel of record, and for its Complaint against the Defendants, states as follows:

## THE PARTIES

1.     Plaintiff Hi-Tech is corporation organized and existing under the laws of the State of Georgia, with its principal place of business located at 6015-B Unity Drive, Norcross, Georgia 30071.

2.     Hi-Tech manufactures dietary supplement products and sells, distributes, and markets its products in the State of Georgia and throughout the United States.

1

3.     Defendant MusclePharm Corporation is a Nevada corporation with a principal place of business at 4721 Ironton Street, Building A, Denver, Colorado 80239.

4.     MusclePharm also manufactures dietary supplement products and sells, distributes, and markets its products, including the protein products at issue, in the State of Georgia, in this District, and throughout the United States.

5.     Musclepharm Corporation can be served through its Registered Agent VCORP Services, LLC located at 1645 Village Center Circle, Suite 170, Los Vegas, Nevada  89134.

6.     Bradley Pyatt ("Pyatt") is an individual and citizen of the State of Colorado and can be served at his residence address 11345 W. 38th Ave, Wheat Ridge, Colorado 80033-3959.

7.     Upon information and belief, Pyatt was formerly the chief executive officer of MusclePharm.

8.     Pyatt is liable under the Lanham Act for torts which he authorized or directed in or in which he participated.  Mr. Pyatt also authorized, participated in, directed, controlled, caused, ratified, and/or was the moving force behind the selection and sale and distribution of the product and/or personally sold the product described herein.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C § 1331 (federal question), 15 U.S.C § 1121 (Lanham Act claims), 28 U.S.C. § 1338 (trademark and unfair competition claims), 28 U.S.C § 1367 (supplemental jurisdiction), and 28 U.S.C. § 1332 (diversity), as this action is between citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds seventy-five thousand dollars ($75,000.00).

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Plaintiff Hi-Tech resides in this District, and a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTUAL ALLEGATIONS

11.     This action seeks redress for Defendants' deliberate and misleading representations regarding the whey protein of MusclePharm's Arnold Schwarzenegger Series Iron Mass product.

12.      This is also an action under the Lanham Act, 15 U.S.C. § 1051, *et. seq.*, and the Georgia Deceptive and Unfair Trade Practices Act, O.C.G.A. §10-1-372 (a), for relief from Defendants' false advertising, deceptive acts, and unfair competition arising out of Defendants' use of false or misleading descriptions and/or false or misleading representations of fact. Hi-Tech brings this action to enjoin Defendants from continuing to falsely advertise its products, and to recover

from the competitive injury that Defendants' false advertising and unfair competition have caused to Hi-Tech's business.

13.    This Court has personal jurisdiction over Defendants.

14.    This Court may exercise personal jurisdiction over the Defendants pursuant to O.C.G.A. § 9-10-91 because one or more of the Defendants are doing business in this judicial district and/or have committed tortious acts within this judicial district, including unfair competition, among other wrongful and unlawful acts.

15.    By way of further example and without limitation, Defendants have purposefully and voluntarily placed the products described herein into the stream of commerce with the knowledge, understanding, and expectation that such products would be and are purchased in the Northern District of Georgia.

16.     The products described herein are, and have been, available for purchase in the Northern District of Georgia.

## HI-TECH AND ITS NITROPRO® WHEY PROTEIN PRODUCT

17.    Hi-Tech is a producer of high quality dietary supplements, including NitroPro®, a whey protein-containing dietary supplement for consumers seeking to develop and/or preserve muscle mass and strength.

18.    Hi-Tech's NitroPro® product is similar to Defendants' MusclePharm Arnold Schwarzenegger Series Iron Mass product.

19.     NitroPro® directly competes against MusclePharm's Arnold Schwarzenegger Series Iron Mass product in that both products are marketed as dietary supplement protein powders.

20.     Hi-Tech distributes, markets and sells NitroPro® in the State of Georgia and throughout the United States via an extensive network of wholesale, Internet, and retail outlets such as health food stores, gyms and fitness centers.

21.     Hi-Tech has expended substantial resources to develop, promote, brand, market, sell, and maintain the quality of its NitroPro® product.

22.     Hi-Tech markets and promotes its dietary supplements, including NitroPro®, through many types of advertising media including printed brochures and flyers, magazine advertisements, and distributors' catalogs. In addition, Hi-Tech's NitroPro® has been featured prominently in the trade publication entitled "Hi-Tech Health and Fitness," which was published quarterly for individuals and companies interested in the dietary supplement industry.  As a result, Hi-Tech's NitroPro® product and brand has established substantial and valuable goodwill among consumers of dietary supplements.

23.     A key element to Hi-Tech's advertising campaigns is the fact its NitroPro® product contains high quality whey proteins. A reasonable consumer, looking at the false and misleading claims on Defendants' product label, and reading the "Supplement Facts," would be misled into thinking that the 40 grams

of protein per serving claimed by Defendants for their product are derived exclusively from hydrolyzed beef protein and lactoferrin protein.

24.     Protein is known as a "whole" or "complete" protein source, meaning it contains all of the essential amino acids the human body needs to build protein-based compounds such as muscle tissue, skin, fingernails, hair, and enzymes. Nowhere on Defendants' label does it state, or even imply, that the protein content contains any--let alone substantial--amounts of protein-spiking agents such as free-form amino acids and non-protein compounds.  In fact, by stating on the label that the product contains a total of 40g in protein, Defendant specifically represents a content of actual protein, as opposed to protein spiking agents.

25.     Protein powder is especially rich in branched-chain amino acids – leucine, isoleucine, and valine – which are metabolized directly into muscle tissue instead of being first processed by the liver.

26.     Although amino acids are the "building blocks" of protein, free form amino acids and non-protein amino acids do not provide the same health benefits of a complete or whole protein such as whey protein. There have been several studies that have shown that protein is absorbed more rapidly than amino acids. See e.g., *Di Pasquale MG. Amino Acids and Proteins for the Athlete: The Anabolic Edge, Second Edition.  Boca Raton, FL: CRC Press; 2008: p.190.*

27.     The whey protein industry is a growing and extremely competitive business environment: "During the forecast period [of 2013-2018], [the market for] protein products is expected to grow by 62% to reach US$7.8 billion in 2018." *See* http://www.euromonitor.com/sports-nutrition-in-the-us/report.

28.     The wholesale price of whey protein is significantly higher than the wholesale price of free form amino acids and non-protein amino acids.

### DEFENDANTS' FALSE PRODUCT CLAIMS AND "PROTEIN SPIKING" OF ITS ARNOLD SCHWARZENEGGER IRON MASS SERIES PRODUCT.

29.     Upon information and belief, Defendants market, advertise, distribute, and sell MusclePharm's Arnold Schwarzenegger Series Iron Mass product throughout the State of Georgia, in this District, and across the United States.

30.     In marketing and advertising the Arnold Schwarzenegger Series Iron Mass product to consumers, Defendants make a specific false and misleading label claim regarding the amount and source of protein in the product by stating, "MUSCLE PLASMA PROTEIN TECHNOLOGY: 40g of a potent blend of hydrolyzed beef protein and lactoferrin protein."

31.     Defendant further misleads consumers by creating the sub-category "Muscle Plasma Protein Matrix" under the Supplement Facts portion of the product label.  This subcategory only contains the ingredients hydrolyzed beef Protein and lactoferrin protein.  This Supplement Facts panel also discloses that the

protein content of the Product is 40 grams per serving.   Nowhere else in the Supplement Facts panel does Defendant list any other "proteins."  See "Exhibit 1".

32.     Though the protein-spiking agents are included in the overall protein count, they are not protein.  In both the Product label and the Supplement Facts panel, Defendant separates the actual protein (hydrolyzed beef protein and lactoferrin protein) from the protein spiking agents (creatine monohydrate and free-form amino acids), by placing the protein-spiking components under the "Performance Growth & Muscle Volumizer" sub-category.

33.     Defendant also makes this distinction on the product label by including the misleading statement, "It utilizes a 5-stage Mass Delivery System, comprised of advanced protein technology, elite complex carbohyrates, healthy fats, cutting-edge performance ingredients and a balanced digestive blend". Defendant again separates the categories containing the actual proteins from the protein-spiking agents under their "5-stage Mass Delivery System."

34.     Once these protein-spiking agents are removed from the formula of analysis, and the "bound" amino acid count is determined, the true content of hydrolyzed beef protein and lactoferrin protein in the product can be determined.

35.     Laboratory tests performed on the Arnold Schwarzenegger Series Iron product reveal the actual total content per serving of protein is actually around 19.4

grams (as calculated from the total bonded amino acids) as opposed to 40 grams of protein claims by Defendant for the Product. See "Exhibit 2."

36.     Thus, Defendants' claims regarding the protein quality and content of its Arnold Schwarzenegger Series Iron Mass product, as set forth herein, are false and misleading. As a result, the consumer is left with a product that contains 48.5% less protein than advertised in the Arnold Schwarzenegger Series Iron Mass product.

37.     Instead of including the quality and amount of whey protein advertised, MusclePharm substitutes Creatine, a non-proteinogenic compound, and other free-form amino acids. As a result, nitrogen tests performed on MusclePharm's Nitro-Pro product would misleadingly indicate that the product contains the superior protein content represented when it does not, in fact, contain the amount of whole protein or quality ingredients advertised.

38.     Covertly substituting non-proteinogenic compounds and/or free-form amino acids for whey protein or other complete protein ingredients in a product is commonly referred to in the market as "protein-spiking," "nitrogen-spiking," or "amino-spiking."

39.     Upon information and belief, MusclePharm "spiked" its Arnold Schwarzenegger Series Iron Mass product in order to reduce production costs,

increase profit margins, and unfairly compete with Hi-Tech's NitroPro® product and brand.

40.    Thus, Defendants' claims regarding the protein content of its Arnold Schwarzenegger Series Iron Mass product, as set forth herein, are false and misleading.

41.    Defendants knew or should have known their claims regarding the protein and/or sodium content of their product are false and/or misleading.

42.    Upon information and belief, Defendant Pyatt participated in, directed, controlled, caused, ratified, and/or was the moving force behind the selection and circulation of the false and/or misleading representations set forth herein.

43.    Upon information and belief, Defendants made the false and/or misleading representations set forth herein with the intention of deceiving customers and inducing said customers to rely upon said representations and purchase the Arnold Schwarzenegger Series Iron Mass product instead of H-Tech's product.

44.    Upon information and belief, the false and/or misleading representations set forth herein actually deceived, or had the tendency to deceive, a substantial portion of the targeted consumer base.

45.     Upon information and belief, consumers justifiably relied upon the false and/or misleading representations set forth herein when purchasing the Arnold Schwarzenegger Series Iron Mass product.

46.     Hi-Tech has suffered and continues to suffer harm as a consequence of Defendants' wrongful marketing conduct in promoting its Arnold Schwarzenegger Series Iron Mass product including, but not limited to, competitive harm, diverted or lost sales, and harm to the goodwill of Hi-Tech's NitroPro® and brand.

## DEFENDANTS' FRAUDULENT CONDUCT AND RACKETEERING ACTIVITIES

47.     Upon information and belief, Pyatt operated and managed the affairs of MusclePharm throughout all relevant times.

48.     MusclePharm and Pyatt knowingly engaged in a scheme to intentionally defraud consumers through MusclePharm's false product claims regarding Arnold Schwarzenegger Series Iron Mass product's content, quality, characteristics, and/or ingredients.

49.     MusclePharm and Pyatt knowingly engaged in a scheme to intentionally defraud Hi-Tech out of sales and profits through MusclePharm's sales of its inferior Arnold Schwarzenegger Series Iron Mass product.

50.     In intentional furtherance of this scheme, MusclePharm used the Internet to disseminate MusclePharm's inferior Arnold Schwarzenegger Series

Iron Mass product to consumers across the United States, and to enable consumers to purchase MusclePharm's Arnold Schwarzenegger Series Iron Mass product online.

51.     In intentional furtherance of this scheme, MusclePharm also used the U.S. Mail and/or other interstate carriers to ship Arnold Schwarzenegger Series Iron Mass product to purchasing consumers throughout the United States.

52.     Upon information and belief, MusclePharm engaged in the fraudulent activities set forth herein on a repeated and continuous basis over the course of, at least, the past two (2) years.

53.     Defendant Pyatt agreed with others associated with and employed by MusclePharm to participate in and facilitate the fraudulent scheme set forth in herein and had actual knowledge of MusclePharm's fraudulent activities set forth herein.

54.     Defendants' fraudulent activities described herein deceived consumers into believing MusclePharm's Arnold Schwarzenegger Series Iron product was a quality protein product like Hi-Tech's NitroPro® product, and caused and enabled consumers to purchase MusclePharm's Arnold Schwarzenegger Series Iron Mass product instead of Hi-Tech's NitroPro® product.

55.     As a direct and proximate cause of Defendants' schemes and fraudulent activities set forth herein, Hi-Tech sustained injury to its business and

property in the form of lost or diverted sales, competitive advantages, and goodwill in its NitroPro® trademark and brand.

## COUNT I

### False Advertising Under Lanham Act § 43(a), 15 U.S.C. § 1125(a) Against MusclePharm and Pyatt

56.     Plaintiff incorporates by reference Paragraphs 1 through 55 above as though fully set forth herein.

57.      Defendants have knowingly made in interstate commerce and in this District, advertisements and labels that contain false or misleading statements of fact regarding its Arnold Schwarzenegger Series Iron Mass product. These advertisements contain actual and/or misleading statements including, but not limited to, the claims regarding Arnold Schwarzenegger Series Iron Mass' protein content.  Upon information and belief, Pyatt personally authorized or directed these false and misleading statements,

58.     These false or misleading statements actually deceive, or have a tendency to deceive, a substantial segment of Plaintiff's customers, and this deception is material in that it is likely to influence the purchasing decisions of Plaintiff's customers.

59.     Defendants' false and misleading advertising statements violate the Lanham Act § 43(a), 15 U.S.C. § 1125(a).

60.     Defendants' actions have caused, and will continue to cause, harm to Plaintiff in the form of lost or diverted sales.

61.     Defendants have caused, and will continue to cause, immediate and irreparable injury to Plaintiff, including injury to its business, ability to compete, and goodwill in its NitroPro® trademark and brand for which there is no adequate remedy at law.  Plaintiff, therefore, is entitled to an injunction under 15 U.S.C. § 1116 restraining Defendants, their agents, employees, representatives, and all persons acting in concert with them from engaging in further actions of false advertising, and ordering removal of all Defendants' false advertisements and labels.

62.     Pursuant to 15 U.S.C. § 1117, Plaintiff is entitled to recover from Defendants the damages sustained by Plaintiff as a result of Defendants' acts in violation of Lanham Act § 43(a).  Plaintiff is at present unable to ascertain the full extent of the monetary damages it has suffered by reason of Defendants' acts.

63.     Pursuant to 15 U.S.C. § 1117, Plaintiff is further entitled to recover from Defendants the gains, profits, and advantages that they have obtained as a result of their acts.  Plaintiff is at present unable to ascertain the full extent of the monetary damages it has suffered by reason of Defendants' acts.

64.     Pursuant to 15 U.S.C. § 1117, Plaintiff is entitled to recover the costs of this action.  Additionally, upon information and belief, Plaintiff believes that

Defendants' conduct was undertaken willfully and with the intention of causing confusion, mistake, or deception, entitling Plaintiff to recover additional damages and reasonable attorney fees.

## COUNT II

### FALSE ADVERTISING IN VIOLATION OF SECTION 43(A)(1)(B) OF THE LANHAM ACT

65.    Hi-Tech incorporates paragraphs 1 through 64 as if fully set forth herein.

66.    Defendants, who sell "dietary supplements," have purposely made false and misleading descriptions of fact concerning the nature, characteristics and qualities of their Arnold Schwarzenegger Series Iron Mass product by failing to disclose, or adequately disclose, to the consumers the accurate amount of protein that is actually in the product.

67.    Defendants' marketing of such misbranded and falsely-labeled substances has the tendency to deceive a substantial segment of the public into believing that they are purchasing a product with different characteristics.  By failing to accurately label the amount of protein on their label, Defendants have misled consumers into believing that they are purchasing a dietary supplement with 51.5% more protein than they are actually getting.

68.    The deception is material because it is likely to influence a consumer's purchasing decision, especially if the consumer has concerns about the

quality of the protein and do not want non-protein compounds like creatine in their product.

69.     Defendants have introduced their false statements into interstate commerce via marketing and advertising on various websites and shipment of its product into interstate commerce containing false labeling.

70.     Defendants' actions, as described above, constitute false and misleading descriptions and misrepresentations of fact in commerce which, in commercial advertising and promotion, misrepresent the nature, characteristics, and qualities of the products in violation of Section 43(a)(1)(B) of the Lanham Act.

71.     Hi-Tech's NitroPro® product competes directly with Defendants' Arnold Schwarzenegger Series Iron Mass product.

72.     As a result of Defendants' misrepresentations, Hi-Tech has suffered both an ascertainable economic loss of money and reputational injury by the diversion of business from Hi-Tech to Defendants and the loss of goodwill in Hi-Tech's product. Indeed, Defendants' conduct is a black eye on the industry as a whole, and has the tendency to disparage and diminish Hi-Tech's NitroPro® product and goodwill.

## COUNT III

## VIOLATION OF THE GEORGIA DECEPTIVE TRADE PRACTICES ACT, O.C.G.A. §10-1-372 (a)

73.     Plaintiff incorporates paragraphs 1 through 72 as if fully set forth herein.

74.     Hi-Tech and Defendants are commercial competitors. Defendants' actions as described above constitute deceptive and unfair trade practices in violation of O.C.G.A. §10-1-372 (a).

75.     The Georgia Deceptive and Unfair Trade Practices Act was enacted to protect the public and legitimate business enterprises from those who engage in unfair methods of competition and unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.

76.     Defendants' actions, as alleged herein, constitute unconscionable commercial practices, deception, fraud, false pretense, false promise, and/or misrepresentation in violation of O.C.G.A. §10-1-372 (a).

77.     Defendants' engage in deceptive, unfair, and fraudulent misrepresentations as alleged herein. Consumers were certain to be deceived because Defendants' knowingly failed to disclose the source, characteristics, ingredients, standards and/or quality of their Arnold Schwarzenegger Series Iron Mass product.

78.     As a direct and proximate result of Defendants' unlawful acts and omissions, Hi-Tech has suffered an ascertainable loss of money or property in the form of diverted or lost sales.

79.     Hi-Tech is without remedy at law and Defendants' deceptive trade practices as set forth herein continue, and will continue, unless enjoined by this Court.

80.     Hi-Tech is therefore entitled to compensatory and punitive damages, equitable and injunctive relief, costs, and reasonable attorney fees.

## COUNT IV

## COMMON LAW UNFAIR COMPETITION

81.     Hi-Tech incorporates Paragraphs 1 through 80 as if fully set forth herein.

82.     Defendants' actions, as set forth above, constitute unfair competition in violation of the common law of the State of Georgia.

83.     Defendants' actions as described herein have caused and will continue to cause irreparable injury to Hi-Tech and, unless restrained, will continue to do so.

84.     As a direct and proximate result of Defendants' conduct, Hi-Tech has suffered damages in an amount to be determined at trial.

85.     Defendants' actions entitle Hi-Tech to compensatory and punitive damages in an amount to be determined at trial.

86.     Defendants' actions are such as to constitute that level of wantonness and lack of care to justify punitive damages under Georgia law.

87.     Hi-Tech is without remedy at law and Defendants' deceptive trade practices as set forth herein continue, and will continue, unless enjoined by this Court.

88.     Hi-Tech is therefore entitled to compensatory damages, punitive damages, equitable and injunctive relief, costs, and reasonable attorney fees.

## COUNT V

### GEORGIA RICO CLAIM
### VIOLATION OF O.C.G.A. § 16-14-4(a)

89.     Hi-Tech incorporates by reference paragraphs 1 through 88 above as though fully set forth herein.

90.     MusclePharm Corp. is a "person" within the meaning of the Georgia RICO Law.  O.C.G.A. § 16-14-1, *et seq*.

91.     Bradley Pyatt is a "person" within the meaning of the Georgia RICO law.  O.C.G.A. § 16-14-1, *et seq*.

92.     Bradley Pyatt is employed by or associated with MusclePharm Corp., within the meaning of the Georgia RICO Law.  O.C.G.A. §16-14-4(b).

93.     In committing the acts described above, the Defendants, and their officers, agents, and employees repeatedly acted in furtherance of an unlawful

scheme and endeavor that was continuously executed by them throughout, at least, the past two years.

94.    From on or about a date unknown but at least for at least the two years, the Defendants herein did knowingly and willfully devise and intend to devise a scheme to intentionally defraud Hi-Tech out of sales and profits through their Arnold Schwarzenegger Series Iron Mass product to consumers across the United States, and to enable consumers to purchase their Arnold Schwarzenegger Series Iron Mass product online.

95.    From on or about a date unknown but at least for at least the two years, the Defendants herein did knowingly and willfully devise and intend to devise a scheme to intentionally defraud Hi-Tech out of sales and profits though their false and/or misleading product claims regarding the content, quality, characteristics, and/or ingredients of their Arnold Schwarzenegger Series Iron Mass product.

96.    In committing the acts described above, Defendants, their co-conspirators currently unknown to Hi-Tech, and their officers, agents, and employees, repeatedly acted in furtherance of the unlawful scheme through a pattern of racketeering activity.

97.    Defendants, their co-conspirators currently unknown to Hi-Tech, and their officers, agents, and employees, repeatedly caused letters, and other matters

and things to be deposited with and delivered by the United States Postal Service and/or interstate couriers to each other and others in repeated violation, or attempted violation, of 18 U.S.C. § 1341 (mail fraud).   Defendants specifically used the United States Postal Service and/or interstate couriers to ship the Arnold Schwarzenegger Series Iron Mass product to purchasing consumers throughout the United States.

98.   To the extent that either of the Defendants did not participate directly in these acts of mail fraud, they knowingly and willfully caused, aided, abetted, advised, encouraged, hired, counseled, commanded, induced or procured another to commit these violations of 18 U.S.C. § 1341 and in violation of O.C.G.A. § 16-220.

99.   Defendants, and their officers, agents, and employees, could reasonably foresee the uses of the United States Postal Service and interstate couriers in connection with the execution of these unlawful schemes.  All of these acts constitute "intangible contacts" with the State of Georgia designed to further all of the violations alleged in this Complaint.  In this regard, the Defendants, to include individual defendants and corporations have purposely directed tortious and fraudulent conduct toward the State of Georgia and Hi-Tech.

100.  Each of these "mailings" constitutes a separate racketeering act in furtherance of the fraudulent schemes which constitute a pattern of "racketeering

activity" under Georgia RICO as specified in O.C.G.A. §§ 16-14-3(4)(A) and (5)(C).

101.  In furtherance of these unlawful schemes, and for the purpose of executing, and attempting to execute these schemes, Defendants and their officers, agents, and employees, repeatedly utilized the internet and email communications, in repeated violation, or attempted violation, of 18 U.S.C. § 1343 (wire fraud). Defendants specifically used the internet and email communication to electronically disseminate their Arnold Schwarzenegger Series Iron Mass product to enable the online purchase of said products by consumers throughout the United States.

102.  To the extent that any of the Defendants did not participate directly in these acts of wire fraud, they knowingly and willfully caused, aided, abetted, advised, encouraged, hired, counseled, commanded, induced or procured another to commit these violations of 18 U.S.C. § 1343 in violation of O.C.G.A. § 16-2-20.

103.  Each of the Defendants and their officers, agents, and employees, could reasonably foresee the uses of the interstate wire communications in connection with the execution of these unlawful schemes.  All of these acts constitute "intangible contacts" with the State of Georgia designed to further all of the violations alleged in this Complaint.  In this regard, the Defendants, to include

the individual defendant and corporation, have purposely directed tortuous and fraudulent conduct toward the State of Georgia and Hi-Tech.

104.   Each of these "interstate wirings" constitutes a separate racketeering act in furtherance of the fraudulent schemes which constitute a pattern of "racketeering activity" under Georgia RICO as specified in O.C.G.A. § 16-14-3(4)(A) and 5(C).

105.   Each of these acts of racketeering activity was authorized, requested, commanded, performed, or recklessly tolerated by Bradley Pyatt, and was done in furtherance of the execution of the unlawful schemes designed to defraud Hi-Tech out of sales and profits.

106.   The multiple acts of racketeering activity by the Defendants and their officers, agents, and employees were interrelated, were and are part of a common and continuous pattern of racketeering activity to include fraudulent acts and schemes, which were and are acts perpetrated for the same or similar purposes, and were and are not a series of disconnected, isolated or sporadic acts.  These acts were and are part of the regular and routine way the Defendants conduct their business. The multiple racketeering acts by the Defendants and their officers, agents, and employees constitute a "pattern of racketeering activity" as defined in O.C.G.A. § 16-14-3(4)(A) and (5).

107.   By reason of the foregoing, the Defendants, and their officers, agents, and employees, directly and indirectly, acquired or maintained control of property, i.e. profits diverted from Hi-Tech, through a pattern of racketeering activity in violation of the Georgia RICO Act (O.C.G.A. § 16-14-4(a)).

108.   As a direct and proximate result of these violations of O.C.G.A. §16 14-4(a) by Defendants, and their managerial officials, agents, and employees, Hi-Tech been injured and damaged as set forth herein.

## <u>COUNT VI</u>

## GEORGIA RICO CLAIM
## VIOLATION OF O.C.G.A. § 16-14-4(b)

109.   Hi-Tech incorporates by reference paragraphs 1 through 108 above as though fully set forth herein.

110.   By reason of the foregoing, the Defendants and their managerial officials, agents, and employees, have unlawfully, knowingly and willfully conducted and participated in, directly or indirectly, the affairs of  MusclePharm Corp. through a pattern of racketeering activity in violation or attempted violation of O.C.G.A. § 16-14-4(b).

111.   As a direct and proximate result of these violations of O.C.G.A. §1614-4(b) by Defendants, and their managerial officials, agents, and employees, Hi-Tech has been injured and damaged as set forth herein.

## COUNT VII

### GEORGIA RICO CLAIM
### VIOLATION OF O.C.G.A. § 16-14-4(c)

112.   Hi-Tech incorporates by reference paragraphs 1 through 111 above as though fully set forth herein.

113.   By reason of the foregoing circumstances and events, Defendants individually and collectively knowingly and willfully, combined, colluded, conspired, attempted, endeavored, and continue to combine, collude, conspire, and endeavor, to violate the provisions of O.C.G.A. §16-14-4(a) and (b), in violation of O.C.G.A. §16-14-4(c).

114.   Defendants committed overt acts and preparatory acts to effect the objects of the conspiracy or endeavor as specified in all of the paragraphs preceding this Count.  Each of these overt or preparatory acts is a racketeering act. O.C.G.A. § 16-14-3(5).

115.   As a direct and proximate result of these violations of O.C.G.A. § 16-14-4(c) by Defendants, and their managerial officials, agents, and employees, Hi-Tech has been injured and damaged as set forth herein.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Hi-Tech prays for relief as follows:

1.      That Defendants be adjudged to have violated 15 U.S.C. § 1125(a) by unfairly competing against Hi-Tech by using false, deceptive or misleading statements of fact that misrepresent the nature, quality, and characteristics of the Arnold Schwarzenegger Series Iron Mass product.

2.      That Plaintiff Hi-Tech be awarded damages it has sustained as a consequence of Defendants' conduct.

3.      That Plaintiff Hi-Tech be awarded Defendants' profits obtained by as a consequence of Defendants' unlawful conduct.

4.      That such damages and profits be trebled and awarded to Hi-Tech as a result of Defendants' willful, intentional and deliberate acts in violation of the Lanham Act § 43(a).

5.      That all of Defendants' misleading and deceptive materials and products be destroyed as allowed under 15 U.S.C. § 1118.

6.      That this case be declared exceptional in favor of Plaintiff Hi-Tech under 35 U.S.C. § 285 and that Hi-Tech be awarded its reasonable attorneys' fees and other expenses incurred in connection with this action pursuant to 35 U.S.C. §§ 284 and 285 and Rule 54(d) of the Federal Rules of Civil Procedure;

7.      That Defendant Pyatt be adjudged to have violated 15 U.S.C. §1125(a) by unfairly competing against Hi-Tech by using false, deceptive or misleading statements of fact that misrepresent the nature, quality, and

characteristics of the MusclePharm Arnold Schwarzenegger Series Iron Mass product.

8.      That such damages and profits be trebled and awarded to Hi-Tech as a result of Defendants' willful, intentional and deliberate acts in violation of the Lanham Act;

9.      That Plaintiff Hi-Tech recover actual damages, treble damages, costs, and attorneys' fees for Defendants' violation of Georgia RICO statute;

10. That Defendants be adjudged to have unlawfully and unfairly competed against Hi-Tech under the laws of the State of Georgia, O.C.G.A. §10-1-372(a);

11.      That Plaintiff Hi-Tech be awarded Punitive Damages pursuant to both Georgia and federal law; and

12.      That Plaintiff Hi-Tech be awarded such other relief as this Court may deem just and proper.

JURY TRIAL DEMAND

 Pursuant to Rule 38 of the Federal Rules of Civil Procedure and all applicable law, Plaintiff Hi-Tech requests a trial by jury on all issues so triable.

Respectfully submitted,


> _S/ Edmund J. Novotny_
> Edmund J. Novotny, Jr.
> Georgia Bar No. 547338
> Charles R. Bridgers
> Georgia Bar No. 080791
> _Counsel for Plaintiff Hi-Tech_
> _Pharmaceuticals, Inc._

101 Marietta Street
Suite 3100
Atlanta, Georgia 30303
Tel: 404-979-3150
Fax: 404-979-3170
ednovotny@dcbflegal.com
charlesbridgers@dcbflegal.com